Filed 9/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LISA HOTT,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>COLLEGE OF THE SEQUOIAS<br>COMMUNITY COLLEGE DISTRICT,<br><br>    Defendant and Appellant. | F070802<br><br>(Super. Ct. No. 249736)<br><br><br>**OPINION** |

       APPEAL from a judgment of the Superior Court of Tulare County. H.N. Papadakis, Judge. (Retired Judge of the Fresno Sup. Ct. assigned by the Chief Justice pursuant to article VI, § 6 of the Cal. Const.)

       Stubb & Leone, Louis A. Leone, Claudia Leed and Christopher Vincent for Defendant and Appellant.

       Herr Pederson & Berglund, Leonard C. Herr, Kris B. Pedersen and Rhea Ikemiya for Plaintiff and Respondent.

-ooOoo-

       Plaintiff Lisa Hott (Hott) is a former College of the Sequoias Community College District (COS) administrator whose position was eliminated due to budget cuts. Pursuant to Education Code section 87458,[1] COS offered Hott, who did not have any prior faculty

---

[1] Undesignated statutory references are to the Education Code.

experience, a position as a first-year probationary faculty member, which she accepted. COS determined Hott's faculty salary under the terms of the collective bargaining agreement between COS and its faculty members, and gave her credit for five years' occupational experience, which was the maximum credit she could receive. Hott subsequently filed a complaint for declaratory relief against COS, alleging that COS placed her in the wrong "step" on the faculty academic salary schedule because it should have given her full credit for her 15 years of administrative experience. The trial court agreed with Hott, finding that pursuant to a handbook for administrative employees, she was entitled to year-for-year credit for her total years of employment at COS.

On appeal from the resulting judgment, COS contends the trial court erred: (1) in hearing and determining Hott's claim because it falls within the exclusive jurisdiction of the Public Employment Relations Board (PERB); and (2) the trial court erred in finding that Hott was entitled to a salary greater than that provided for in the collective bargaining agreement. We agree with COS's second contention and reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

COS hired Hott in 1996 as a temporary employee; she became a permanent employee in 1997, when she was promoted to the position of Director of Fiscal Services. In August 2006, she became the Director of Admissions and Records, which was a full-time educational administrator position. By the time of trial, Hott had been an employee of COS for over 17 years. Hott has a bachelor's degree in business and a master of business administration, and is a certified public accountant.

In January 2011, the COS Board of Trustees (Board) eliminated Hott's position due to budget cuts. Hott, who did not have any prior faculty experience, was released from her appointment as an educational administrator effective June 30, 2011.

Hott learned of the decision to eliminate her position in December 2010 from John Bratsch, COS's Dean of Human Resources and Legal Affairs, who told Hott she would

2.

be an instructor in the business department. Hott asked Bratsch about her salary. At first, Bratsch said he thought her pay would remain the same, but a few days later he told Hott this may not be correct and he would have to check on the matter. Sometime in December 2010, Hott met with COS's payroll coordinator, who led Hott to believe that COS was not going to follow what Hott understood was the "normal practice" of keeping administrators who were classified to a lower level at the same pay until their years of service caught up to the new classification.

When her administrative position was eliminated, Hott did not have an employment contract with COS. Without a contract, Hott understood her employment to be governed by the Education Code, COS Board Policies and Procedures, and COS's Personnel Policies for Management Council (the handbook). Her understanding comported with Bratsch's understanding.

The Board first adopted the handbook in 1991; it adopted a revised handbook in 1999. The Board intended the handbook to provide Management Council members with "a reference for issues which affect them." The handbook states that the Board recognizes the importance of establishing a Management Council to fulfill its legal responsibility in the management of COS, and identifies specific objectives of the Management Council, including providing a "means whereby economic and welfare concerns of the Management Council members can be addressed, including position descriptions, classifications, evaluations, fringe benefits, promotion, assignment and transfer." Hott was a member of the Management Council while in her administrative position.[2] According to the handbook, the Board could amend the policies at any time in

---

[2] The Management Council consisted of personnel that the Board designated as members. Members included the following "job groups": Superintendent/President, Vice-President, Provost, Dean, Executive Director, Project Director, Director, Public Information Officer, Manager, Coordinator, Chief Accounting Officer, District Police Chief, Supervisor, and Confidential Employees. These job groups were categorized into (1) educational administrators, (2) classified administrators, and (3) confidential

3.

accordance with the recommendations of the Superintendent/President following consultation with the Management Council.

The handbook addresses issues such as recruitment and selection, compensation, work schedule, and absences. Section VII. addresses "Reassignment/Transfer" and contains the following subheadings: "A. Temporary Reassignment"; "B. Permanent Reassignment"; "C. Transfer"; D. Return Rights; and "E. Retreat Rights." Section VII. B. on permanent reassignment provides: "When a management employee is reassigned to a lower-level management or non-management position, s/he shall be granted year-for-year credit on the salary schedule for each year of employment with the District. [¶] Seniority and related employment rights will be based on the original date of hire in the District, credentials held, and prior credited services."[3] (Section VII. B.) Section VII. E. on retreat rights states: "All pertinent sections of the Education Code and other applicable laws will be adhered to in the determination of retreat rights for administrators employed by [COS]. (See: Education Code § 87458, AB 1725, Appendix M.)"

The Board adopted appendix M to the handbook, entitled "Procedure for Administrator Return Rights[,]" in 1992. The procedure states that an administrator who

employees. Confidential employees included the following "job groups": Executive Assistants to the Superintendent/President and Vice-President, Payroll/Accounting Coordinator, Academic Resources Coordinator, Human Resource Specialist and Assistant, Public Information Assistant and Research Technician.

[3] The handbook does not define the term "non-management position" or state on which "salary schedule" year-for-year credit will be given. According to section IV. A of the handbook, the Superintendent/President, with the Board's approval, places a new manager/confidential staff member on the "salary schedule" based on the new member's background and experience. There are two salary schedules included in the handbook's appendix – one for management and the other for confidential employees. The salary schedules are arranged in a grid-like format, with vertical columns representing years of work experience and horizontal columns representing the salary range for a particular management or confidential position title.

is not part of the classified service, was hired after June 30, 1990, and was not previously tenured at COS, has the right to become a first-year probationary faculty member at the conclusion of the administrative assignment if certain conditions apply. It also lists the procedures to be followed when an administrator is assigned to a faculty position. The procedure, however, does not address seniority rights or salary placement. The Board followed this procedure with regard to Hott's assignment to faculty.

Because Hott understood the term "non-management position" referenced in section VII. B. to include faculty, classified and confidential employees, she believed she would be provided year-to-year service credit for every year she worked at COS, and expected those years to apply to any schedule to which she was transferred. Hott relied on the handbook in continuing her employment with COS for 17 years, and in accepting the assignment to a faculty position.

In contrast to management or confidential employees, faculty members and COS are bound by a collective bargaining agreement, the "Master Agreement between COS and COS Teachers Association" (the CBA), which governs the terms of employment of COS faculty members. The COS Teachers Association (COSTA) is the exclusive bargaining representative of faculty members.

Under the CBA, a faculty member's salary is derived from the "Academic Salary Schedule." The faculty member's placement on the schedule is determined based on education and experience. The schedule is arranged in a grid-like format – the vertical columns, or "class," represent the faculty member's educational background (e.g., teaching credentials and degrees earned, with the classes ranging from I to V), while the horizontal columns, or "steps," represent the number of years of experience. The CBA requires each faculty member to be placed on the salary schedule at the class and step for which he or she is qualified.

Under the CBA, the step placement for "newly hired faculty" is determined as follows: "Newly hired faculty will be given full credit for past teaching experience for

step placement, not to exceed five (5) years. [¶] Occupational experience for newly hired faculty shall be limited to those teaching in occupational areas and shall follow a general rule of two (2) for one (1), not to exceed five (5) years for initial step placement."

The CBA addresses the "Seniority Rights of Retreating Administrators" in section 25.3. Subsections 25.3.1 and 25.3.2 provide for year-for-year service credit to a retreating administrator only when he or she "was in a regular or contract faculty position with the District prior to service as an administrator[,]" and the administrator had been continuously employed by COS as a faculty member and administrator.[4] With respect to administrators who were never in a faculty position, subsection 25.3.3 provides: "The retreat rights of an administrator never employed in a regular or contract faculty position at COS shall be determined by law."

On April 6, 2011, Hott was given formal notice by letter that COS's Superintendent/President, Dr. William T. Scroggins, would be recommending to the

---

[4] Section 25.3, entitled "Seniority Rights of Retreating Administrators" states in its entirety:

"25.3.1 An administrator who retreats to a faculty position shall be given seniority credit in the faculty position for service rendered in his or her administrative position(s), subject to the following qualifications:

"25.3.1.1 The employee was in a regular or contract faculty position with the District prior to service as an administrator.

"25.3.1.2 The employee has been continuously employed by the District as a faculty member an[d] administrator.

"25.3.2 An employee who meets the qualifications set forth immediately above shall be entitled to the following seniority credits:

"25.3.2.1 For placement on the faculty salary schedule, including the longevity steps, the employee shall receive one year of step credit on the faculty salary schedule and all other privileges and entitlements of faculty service relating to seniority for each full year of service as an administrator.

"25.3.3 The retreat rights of an administrator never employed in a regular or contract faculty position at COS shall be determined by law."

Board that she "be appointed as a first year probationary faculty member at the conclusion of your educational administrator assignment[,]" that this recommendation would be opposed by the chair of the business division and the president of the academic senate, and the Board was scheduled to consider the matter at its next meeting. On April 11, 2011, the Board voted to " 'reassign[] [Hott] to a first year, probationary faculty member position at the conclusion of her appointment as an educational administrator.' " The following day, Hott was presented with a document entitled "Faculty Salary Placement" which stated that Hott's position would be a probationary tenure track one, and her salary placement would be at class V, step 6, for an annual salary of $72,069.55. Hott accepted the faculty position; she began work as a faculty member on August 12, 2011, and was still on the faculty at the time of trial. Hott was the first COS administrator without faculty experience to retreat to a faculty position at COS.[5]

COS did not give Hott year-for-year service credit for each year of her employment because it determined that once Hott became a faculty member, she was governed by the CBA, and since she did not have any prior faculty experience, she was not entitled to year-for-year service credit. Instead, COS gave Hott five years' credit for her occupational experience pursuant to section 9.2.1. The parties stipulated that if Hott were granted year-for-year service credit, her placement on the Academic Salary Schedule would be at class V, step 21, for an annual salary of $92,669.62.

The CBA sets forth a grievance process for COS faculty members who claim that "there has been a violation, misapplication, or misinterpretation of any of the provisions of [the] Agreement, or any law, Board policy or regulation." Hott did not file either a

---

[5] The only other administrator to have exercised retreat rights at COS in recent years was Chris Knox – a long-time COS faculty member who served in a temporary interim assignment in administration for two years before returning to the classroom as a full-time faculty member. COS gave Knox year-for-year salary credit in her faculty position for the two years she worked as an administrator in accordance with the CBA, as she had prior faculty experience.

COSTA grievance or a PERB unfair labor practice charge regarding her salary as a COS faculty member.

*This Lawsuit*

Hott filed a complaint for declaratory relief against COS on November 30, 2012. She sought a judicial determination that the handbook applied to her move from an administrative to a faculty position, and that section VII. B. entitled her to receive a faculty salary of $92,669.92, based on year-for-year service credit and placement at class V, step 21 on the academic salary schedule.

In September 2013, COS filed a motion for judgment on the pleadings in which it argued (1) the trial court did not have jurisdiction because Hott's complaint was within PERB's exclusive jurisdiction, and (2) even if the trial court had jurisdiction, COS properly followed the CBA in determining her salary. The trial court denied the motion. COS challenged that denial by a petition for writ of mandate filed in this court in November 2013, which we summarily denied.

The case proceeded to a two-day bench trial, which concluded in March 2014. The parties submitted stipulated facts, and Hott, Bratsch and COS's President/Superintendent, Stan Carrizosa, testified. Following the close of testimony, the parties submitted post-trial briefs.

On May 27, 2014, the trial court issued its statement of decision, in which it ruled that judgment be entered in Hott's favor. The trial court determined that: (1) when Hott's administrative position was eliminated, the handbook was in effect and "the only writing evidencing her employment rights"; (2) Hott was not subject to the CBA's salary structure because she was not a member of the bargaining unit that negotiated the CBA's terms or a faculty member when her administrative position was eliminated; (3) while COS was obligated under section 87458 to offer Hott the option to become a "first year probationary faculty member[,]" Hott's acceptance of this offer did not afford COS discretion to set her salary at anything less than what would be required for an

8.

administrator with 17 years of service because section VII. B. provided that Hott's salary level would be based on her years of service with the District, not necessarily faculty or teaching years; (4) while under section 87458 Hott's status would be that of a "first year probationary faculty member[,]" it "would not offend" section 87458 to grant her 17 years of service credit, since there was nothing in either section 87458 or the handbook to prevent COS from doing so; and (5) the CBA itself defeated COS's efforts to apply the CBA to fix Hott's salary level, as subsection 25.3.3 states that the retreat rights of administrators never employed in a faculty position at COS are to be "determined by law."

The trial court concluded that "the proper interpretation of the language in the [handbook] is to be applied in the precise terms set forth therein and therefore [Hott]'s salary shall be . . . based on year-for-year credit for her total years of employment at COS and not merely limited to her years as a member of the COS faculty." After supplemental briefing from the parties on the issue of damages, the trial court issued a judgment in Hott's favor awarding her $62,096.66 in damages.

## DISCUSSION

*Jurisdiction and Exhaustion of Administrative Remedies*

As a threshold matter, we address COS's contention that the trial court was without jurisdiction to grant declaratory relief because Hott failed to exhaust her administrative remedies.

The Education Employment Relations Act (EERA), Government Code section 3540 et seq., regulates employer-employee relations within California's public school systems.[6] Government Code section 3543.5 prohibits public school employers, such as

---

[6] The Legislature enacted EERA "to promote the improvement of personnel management and employer-employee relations ... by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by the organizations in their professional and employment relationships with public school employers, to select one employee organization as the

9.

COS, from interfering with employees' exercise of rights guaranteed by the EERA, denying employee organizations the rights guaranteed them by the EERA, refusing or failing to negotiate in good faith with an exclusive representative, interfering with the formation or administration of any employee organization, and refusing to participate in good faith in the EERA's impasse procedure.  (Gov. Code, § 3543.5.)[7]

To ensure the implementation and enforcement of EERA, PERB was established with the enactment of the statute.  (Gov. Code, § 3541.)  PERB " 'provides an administrative remedy for unfair practices and violation of Government Code sections 3540-3549.3.  (Gov. Code, § 3541.3, subd. (i).)' " (*Dixon v. Board of Trustees* (1989) 216 Cal.App.3d 1269, 1277 (*Dixon*).)  PERB's powers and duties are set forth in Government Code section 3541.3, and include, among many other things, the power "[t]o investigate unfair practice charges or alleged violations … as the board deems necessary to effectuate the policies of [EERA]."  (Gov. Code, § 3541.3, subd. (i).)  EERA also

exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of education policy."  (Govt. Code, § 3540.)

[7] Government Code section 3543.5 provides:
"It is unlawful for a public school employer to do any of the following:
"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.  For purposes of this subdivision, "employee" includes an applicant for employment or reemployment.
"(b) Deny to employee organizations rights guaranteed to them by this chapter.
"(c) Refuse or fail to meet and negotiate in good faith with an exclusive representative.  Knowingly providing an exclusive representative with inaccurate information, whether or not in response to a request for information, regarding the financial resources of the public school employer constitutes a refusal or failure to meet and negotiate in good faith.
"(d) Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another.
"(e) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

10.

provides PERB with "exclusive jurisdiction" to make "[t]he initial determination as to whether . . . charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of [the statute]." (Gov. Code, § 3541.5.) "PERB's exclusive jurisdiction extends to all alleged violations of the EERA, not just those which constitute unfair practices." (*Personnel Comm. v. Barstow Unified School Dist.* (1996) 43 Cal.App.4th 871, 885 (*Barstow Unified*).)

"This statutory scheme has been consistently interpreted to confer limited jurisdiction to PERB." (*California Teachers' Assn. v. Livingston Union School Dist.* (1990) 219 Cal.App.3d 1503, 1510 (*Livingston Union*).) Although "PERB does not have exclusive jurisdiction where a *pure* Education Code violation (*as opposed to an arguably unfair practice*) is alleged" (*Dixon, supra,* 216 Cal.App.3d at p. 1277, italics added), it is well settled that the board retains exclusive jurisdiction over disputes which "*arguably*" constitute an unfair labor practice claim under EERA. (*Barstow Unified, supra,* 43 Cal.App.4th at pp. 885–886; *Livingston Union, supra,* 219 Cal.App.3d at p. 1510.) When determining whether a public school employer's conduct may give rise to an unfair labor practice claim, a court "must construe the activity broadly." (*Livingston Union, supra,* 219 Cal.App.3d at p. 1511.)

"[A] school district's improper placement of a teacher on the salary schedule does not constitute an unfair practice as such an act is not of the same character as the unfair practices prohibited by Government Code section 3543.5." (*Dixon*, *supra*, 216 Cal.App.3d at pp. 1279-1280, fn. omitted.) Here, Hott's declaratory relief action is based on her contention that COS improperly placed her at class V, step 6 on the academic salary schedule because her placement was governed by the handbook, not the CBA. As the only issue involved here is whether COS improperly placed Hott on the salary schedule, COS's conduct at issue here does not give rise to an unfair labor practice claim.

11.

Moreover, as Hott asserts and we explain further below, COS's placement of Hott on the academic salary schedule stems from its interpretation of section 87458. "We have found no authority for the proposition that an employer's interpretation of a statute, whether correct or incorrect, which adversely affects the rights of its employees to wages constitutes an unfair practice which should be left for the PERB to determine in the first instance. While an interpretation of a statute adverse to the employee by the employer may be unfair in the lay-sense, such a result does not necessitate a conclusion that it is also an 'unfair practice' within the meaning of Government Code section 3543.5." (*California School Employees Assn. v. Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580, 592-593.)

Accordingly, we conclude that Hott's claim of improper placement on the academic salary schedule does not constitute an arguably unfair practice which the PERB should determine in the first instance, and therefore Hott was not required to exhaust her administrative remedies under the EERA.

*Declaratory Relief*

Hott sought and was granted declaratory relief. In a declaratory relief action where, as here, the decisive underlying facts are undisputed, our review of the propriety of the trial court's decision presents a question of law which we review de novo. (*Dolan–King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974 (*Dolan–King*).)[8] Moreover, we are not bound by the trial court's determination where the question involves the scope and interpretation of a statute. (*Trustors Security Service v. Title*

---

[8] Hott asserts there are disputed facts because the "crux of this case comes down to a factual question about timing: When did Hott cease being an administrator, subject to the [handbook], and when did she become a member of faculty, subject to the CBA?" However, as COS points out, there is no factual dispute regarding the timing of the events that occurred in this case, as there is no question when Hott's employment as an administrator ended and when she became a faculty member. Moreover, as we explain further below, the timing issue Hott raises is irrelevant to this action.

*Recon Tracking Service* (1996) 49 Cal.App.4th 592, 599, superseded by statute on another point as recognized by *Markowitz v. Fidelity Nat. Title Co* . (2006) 142 Cal.App.4th 508, 524.)  When the trial court has interpreted a statute and the legal meaning of a written instrument on undisputed facts, we are presented with questions of law subject to de novo review.  (*Kelly v. County of Los Angeles* (2006) 141 Cal.App.4th 910, 919; *Snow v. Woodford* (2005) 128 Cal.App.4th 383, 393–394; *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158; *Dolan–King, supra,* 81 Cal.App.4th at p. 974.)  "The interpretation of a written instrument ... [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

Hott contends the appropriate standard of review is the highly deferential abuse of discretion standard.  We do not, however, apply this standard whenever declaratory relief is at issue.  Certainly it is true that "[w]hether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion and the court's decision to grant or deny relief will not be disturbed on appeal unless it is clearly shown its discretion was abused." (*Dolan–King, supra,* 81 Cal.App.4th at p. 974; see *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [" 'The trial court's decision to entertain an action for declaratory relief is reviewable for abuse of discretion.' "].)  No party, however, challenges this aspect of the trial court proceedings.

COS contends the trial court erred in granting declaratory relief because (1) when COS eliminated Hott's position as an administrator, it offered her a new position as a faculty member pursuant to section 87458; (2) Hott had no previous faculty experience and was newly hired to the COS faculty when she accepted the faculty position; (3) as a matter of law, the CBA governs the terms and conditions of the employment of COS faculty members; and (4) under the CBA, as a newly hired faculty member with no

previous faculty experience, Hott was entitled to a salary that gives some, but not year-for-year, credit for her service as an administrator. We agree.

The undisputed facts show that COS decided to eliminate Hott's administrative position and reassign her to a faculty position, which was Hott's right under section 87458. Both the handbook, which applies to administrators, and the CBA, which applies to faculty members, address administrators' retreat rights. The handbook provides that "[a]ll pertinent sections of the Education Code and other applicable laws will be adhered to in the determination of retreat rights[,]" and cites to section 87458 and appendix M, which sets forth the substance of section 87458 and the procedure to be followed when an administrator retreats to a faculty position. The handbook, however, is silent regarding seniority rights or salary placement. The CBA addresses the seniority rights of retreating administrators – it provides that a retreating administrator who previously held a regular or contract faculty position with COS will be given year-for-year service credit, while the retreat rights of an administrator who never held a regular or contract or faculty position at COS "shall be determined by law." Thus, under both the handbook and the CBA, an administrator's retreat rights are determined by law.

The parties agree that the applicable law is section 87458,[9] which "sets forth the conditions under which a person previously employed as an administrator shall have the

---

[9] Section 87458 provides:

"A person employed in an administrative position that is not part of the classified service, who has not previously acquired tenured status as a faculty member in the same district and who is not under contract in a program or project to perform services conducted under contract with public or private agencies, or in other categorically funded projects of indeterminate duration, shall have the right to become a first-year probationary faculty member once his or her administrative assignment expires or is terminated if all of the following apply:

"(a) The process by which the governing board reaches the determination shall be developed and agreed upon jointly by representatives of the governing board and the academic senate, and approved by the governing board. The agreed upon process shall include reasonable procedures to ensure that the governing board relies primarily upon

14.

right to become a first-year probationary faculty member at a community college." (*Wong v. Ohlone College* (2006) 137 Cal.App.4th 1379, 1381.)

Under section 87458, "an administrator has the right to reassignment to a first-year probationary faculty member position if the administrator (1) is employed in an administrative position that is not part of the classified service; (2) has not previously acquired tenured status as a faculty member in the same district; (3) is not under contract in a program or project to perform services conducted under contract with public or private agencies, or in other categorically funded projects of indeterminate duration; (4) has completed at least two years of satisfactory service, including any time previously served as a faculty member in the district, and the termination of his or her administrative assignment was for any reason other than dismissal for cause; and (5) [the] first day of paid service in the district as a faculty member or an administrator [was] on or after July 1, 1990." (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 839.)

---

the advice and judgment of the academic senate to determine that the administrator possesses the minimum qualifications for employment as a faculty member. The process shall further require that the governing board provide the academic senate with an opportunity to present its views to the governing board before the board makes a determination and that the written record of the decision, including the views of the academic senate, shall be available for review pursuant to Section 87358.

"(b) Until a joint agreement is reached pursuant to subdivision (a), the district process in existence on January 1, 1989, shall remain in effect.

"(c) The administrator has completed at least two years of satisfactory service, including any time previously served as a faculty member, in the district.

"(d) The termination of the administrative assignment is for any reason other than dismissal for cause.

"(e) This section shall apply to every educational administrator whose first day of paid service in the district as a faculty member or an administrator is on or after July 1, 1990."

Here, there is no dispute that Hott satisfied these conditions, and therefore had the "right to become a first-year probationary faculty member" at COS when her administrative position was eliminated. (§ 87458.) The issue, then, is what her salary as a first-year probationary faculty member should be. Although section 87458 does not explicitly address seniority rights or salary placement, by giving an administrator whose "assignment expires or is terminated" the "right to become a first-year probationary faculty member[,]" section 87458 implies that the former administrator will be treated as any other first-year probationary faculty member, including being placed on the salary schedule applicable to such a faculty member.

Under the CBA, a first-year probationary faculty member would be considered "newly hired faculty[,]" who is eligible for a maximum of five years' credit for past teaching or occupational experience when determining initial step placement. This is because the individual is in his or her first year of employment as a COS faculty member. Applying the CBA to Hott's situation, Hott, as a first-year probationary faculty member, was entitled to, at most, five years' credit for her past occupational experience.

The trial court, however, in effect found that the handbook's provision concerning permanent reassignment of management employees supersedes the CBA's provision regarding the determination of initial step placement for newly hired faculty when it found that COS did not have discretion to set Hott's salary at anything less than what would be required for an administrator with 17 years of service. The two provisions, however, conflict, as under the handbook, a management employee reassigned to a non-management position "shall be granted year-for-year credit on the salary schedule for each year of employment with the District[,]" while under the CBA, a newly hired faculty member is only entitled to a maximum of five years' credit for past occupational experience.

Since the CBA governs Hott's situation, the CBA takes precedence and the trial court erred in giving effect to the handbook's contrary term. (See Govt. Code, § 3540

16.

[chapter governing negotiations in public educational employment "shall not supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations, so long as the rules and regulations or other methods of the public school employer do not conflict with lawful collective agreements"]; *City of San Diego v. Haas* (2012) 207 Cal.App.4th 472, 488 [" 'the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed or prescribed by statute.' "]; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1181 [same]; *Relyea v. Ventura County Fire Protection Dist.* (1992) 2 Cal.App.4th 875, 882 ["Individual contracts, no matter what the circumstances which justify their execution, may not interfere with the terms of the collective agreement."].)  Thus, COS correctly granted Hott five years' credit when determining her placement on the academic salary schedule.

Hott contends the handbook and the CBA do not conflict because only the handbook applied to her.  She asserts the CBA is inapplicable to her situation by its own terms because subsection 25.3.3 of the CBA states that the rights of a retreating administrator never employed in a regular or contract faculty position are determined by law, not the CBA.  But as we have already explained, under the applicable law – section 87458 – Hott was to be treated as any first-year probationary faculty member which, according to the CBA, entitled her to a maximum of five years' credit for her prior occupational experience.[10]  Moreover, while Hott argues the CBA did not apply to her

---

**10** Hott asserts that if COS and COSTA had intended to address the retreat rights of administrators never previously employed as faculty in detail, it would have done so by including those details in the CBA.  Though that would have made the CBA clearer, it was unnecessary to include more detail since section 87458 provides that such retreating administrators are to be treated as first-year probationary faculty members.

17.

situation, she clearly benefitted from its terms when COS used the CBA to determine that she was entitled to be placed in class V (the highest class) on the academic salary schedule based on her education. If only the handbook governed Hott's placement on the academic salary schedule, Hott would not be entitled to any credit for her education, as section VII. B. of the handbook is silent on this issue.

Hott next argues that the CBA could not apply to her until she actually became a faculty member in August 2011. While she concedes that once she became a faculty member, the CBA applied to her, she asserts that because she was still an administrator when COS made its salary placement decision in April 2011, the handbook, not the CBA, applied and should have been followed. She maintains that the question of when she ceased being an administrator and became a faculty member is "crucial[,]" and that it "defies logic" for COS to argue that the CBA applied to her months before she began work as a faculty member.

The timing issue, however, is a red herring. That Hott was still an administrator when she was offered the faculty position did not make it improper for COS to refer to the CBA in deciding where to place Hott on the academic salary schedule, as COS could not ignore the CBA when it offered Hott employment as a first-year probationary faculty member. Without the CBA, it would be impossible to determine where to place Hott on the academic salary schedule, including the appropriate class placement based on Hott's education. For Hott to say that the CBA did not apply merely because she was still working as an administrator when the offer was made defies logic. Instead of an issue of timing, the issue here is whether, based on the language of the CBA and handbook, as well as section 87458, a salary provision from the handbook must be imported into the faculty-employer relationship between Hott and COS that is otherwise governed by the CBA.

After pointing out that section 87458 does not mention salary or salary placement, Hott contends that an analysis of related provisions of the Education Code supports the

conclusion that the term "first-year probationary faculty member" is determinative of a retreating administrator's initial status on the tenure track, not salary. After reviewing Education Code sections governing faculty employment and salaries (§§ 87600-87612, 87801-87834.5), Hott asserts that she is a "contract employee, employed for 'the first academic year' of the tenure track."[11]

But that is precisely the point – by accepting the position as a "first-year probationary faculty member[,]" Hott was placed at the beginning point for faculty members. Under the CBA, the beginning for a first-year probationary faculty member is that of a newly hired faculty member. And as we have explained, as a newly hired faculty member, Hott was entitled to a maximum five years' credit for her occupational experience. Hott asserts the trial court correctly found that it would not offend section 87458 to determine her salary level based on all her previous years in administration. Even if true, that is not the issue. Instead, the issue is whether she is entitled credit for those years, which depends on whether the CBA or section VII. B. applies.

Finally, Hott contends that she is not "newly hired faculty" because she did not go through a hiring process to become a faculty member. She points out that the CBA contains an article entitled "Hiring Procedure[,] which states that "[t]he hiring of faculty will follow the Joint Agreement on Hiring Policy between [COS] Faculty Senate,

---

[11] Section 87602, subdivision (a) states that "[a] contract employee is a probationary employee." Section 87605 provides that a district's governing board "shall employ faculty for the first academic year of his or her employment by contract[,]" and explains that if a person who is neither a tenured employee of the district nor a probationary employee serving under a second or third contract at the time an employment contract is offered to him or her, "shall be deemed to be employed for 'the first academic year of his or her employment.' " The governing board has the discretion to offer contract employees working under first and second year contracts a contract for the following academic year or to employ the contract employee as a regular, or permanent, employee. (§§ 87608, 87608.5, 87602, subd. (b).) Once a contract employee is employed under a third consecutive contract, the governing board must either grant the employee tenure or not employ the person as a tenured employee. (§ 87609.)

Management and Board of Trustees." She asserts that instead of being hired, she was "reassigned" to a faculty position following the elimination of her administrative assignment pursuant to section 87458, which was confirmed by COS's April 2011 minutes that reflected she was "reassigned" and Bratsch's letter stating that she would be "appointed" to a faculty position.

Regardless of the terminology describing Hott's move from administration to faculty, the effect of Hott's reassignment was that she became a newly hired faculty member. Section 87458 obviated the need for a hiring process, since the statute required COS to offer Hott a faculty position, if one were available, upon the elimination of her position as an administrator. Hott cites her 17 years as an administrator for COS to support her position that she was not "newly hired." That she was not a new employee of COS, however, does not mean that she was not "newly hired faculty." COS appropriately treated Hott as newly hired faculty because she was being hired into a faculty position and she had no prior faculty experience.

In sum, COS correctly concluded that the CBA applied to Hott and therefore she was entitled to a maximum of five years' experience in determining her step placement on the academic salary schedule. Accordingly, the trial court erred when it found that the precise terms of the handbook were to be applied and that Hott was entitled to year-to-year credit for her total years of employment at COS.

## DISPOSITION

The judgment in favor of Hott is reversed and the matter remanded to the trial court to enter judgment in favor of COS in a manner consistent with this opinion. Costs on appeal are awarded to COS.

20.

_____
                                                          GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
KANE, J.