Filed 11/1/21; Certified for Publication 12/1/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AWARD HOMES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF SAN BENITO et al., <br><br> Defendants and Respondents. | H044894 <br> (San Benito County <br> Super. Ct. No. CU1500099) |

Tax sharing agreements between the County of San Benito and the City of Hollister require the city to pay the county a fixed fee (referred to as the "Additional Amount") for each residential unit constructed on land that is annexed into the city from the county. Plaintiff is a real estate developer who entered into development agreements with the city to build residential units on land subject to the city-county tax sharing agreements. Plaintiff agreed in those documents to satisfy certain obligations from the tax sharing agreements, but sued the city and the county seeking a declaration that payment of the Additional Amount is not among plaintiff's obligations. After two court trials, judgment was ultimately entered against plaintiff. For the reasons stated here, we will affirm the judgment, concluding that plaintiff agreed to pay the city the Additional Amount fees as part of the development agreements.

# I. TRIAL COURT PROCEEDINGS

## A. TAX SHARING AGREEMENTS BETWEEN THE CITY AND THE COUNTY

The city and the county entered into a "Master Agreement for Tax Transfer Upon Annexation" in 1999 (the 1999 tax sharing agreement). (Capitalization omitted.) The agreement was based on Revenue and Taxation Code section 99, which authorizes counties and cities to enter into master property tax transfer agreements for the exchange of property tax revenues when a city annexes unincorporated territory. By its terms the agreement applies to "all those local agency boundary changes defined in Revenue and Taxation Code section 95(e) as jurisdictional changes, occurring during the applicable period of this agreement, where County is the affected county and City is an affected city."

The city agreed to pay "an additional amount for property annexed as residential property within the affected territory in an amount equal to $7,000 for each single family dwelling unit ultimately created within the affected territory." The Additional Amount "shall accrue at the time the City issues a building permit" for any structure on a particular parcel of land. The agreement states that the Additional Amount "shall be construed to be a real property tax revenue transfer," and that the city agreed to pay the Additional Amount "regardless of the revenue source" the city identified to make the payments. To ensure the county receives the Additional Amount fees, the city agreed that the county can "deduct the Additional Amount then owed ... from City's property tax allocation whether such allocation is derived from the affected territory or any area within the incorporated territory" of the city.

Two other fees provided for in the tax sharing agreement are relevant here. The city agreed to "adopt a Capital Improvement Impact Fee for county jail and juvenile hall facilities," to be "imposed on all new residential construction in the City." The city agreed to transfer to the county the capital improvement fee multiplied by the number of building permits issued within the city. The provision requiring the city to pay the county

2

the Additional Amount regardless of revenue source is incorporated by reference to apply to the capital improvement fee. The city also agreed to "establish, impose and collect a drainage impact fee on all residential and commercial development within the Santa Ana Creek Drainage area," to be used by the city to implement an existing drainage plan. The 1999 tax sharing agreement expired by its terms in 2010.

The city and the county entered into a new "Master Agreement for Tax Transfer Upon Annexation" in 2011 (the 2011 tax sharing agreement). The 2011 tax sharing agreement included the Additional Amount obligation, and increased it to $9,500 per single family dwelling unit. The trigger for the Additional Amount also changed: rather than at building permit issuance, under the 2011 agreement the Additional Amount accrues when the city "signs off on a final occupancy permit for any structure on a particular parcel of land within the affected territory." The city again agreed in the 2011 tax sharing agreement to pay the Additional Amounts regardless of the revenue source identified by the city, and the county is allowed under the agreement to deduct the Additional Amount fees from the city's property tax allocation to the extent the city does not timely pay any Additional Amount. The capital improvement and drainage fee provisions are essentially the same in the 1999 and 2011 tax sharing agreements. The 2011 agreement expired in January 2020.

## B. AGREEMENTS BETWEEN PLAINTIFF AND THE CITY

Plaintiff entered into a development agreement with the city in 2000 for construction of residential units on property referred to as West of Fairview. The property was located in an unincorporated area that the city planned to annex. A prefatory recital states: Plaintiff's "agreement to make the dedications and commitments provided for herein, including without limitation the commitment to assure that the Development pay its own way, constitutes a material factor in City's willingness to approve and execute this Development Agreement." The development agreement provides: "Nothing in this Agreement shall prevent application to [plaintiff] ... of any

provision of the City's General Plan, any City ordinance, any part of the City municipal code or any resolution or other official enactment of the City which is adopted for the purpose of assuring that development in the City ... will generate revenues adequate in the City's judgment to fully pay for all costs of the City associated with or anticipated to result from such development, including without limitation costs for ongoing municipal services and continuing provision of municipal facilities at levels deemed appropriate by the City (a 'Pay Its Own Way Measure')." The agreement also requires plaintiff to pay a $340 fiscal neutrality fee per residential unit, and to satisfy "Developer's obligations" in the 1999 tax sharing agreement between the city and the county. Central to this litigation, the development agreement does not define what is meant by "Developer's obligations."

The West of Fairview annexation was approved by the county's local agency formation commission in 2004. As a condition of the city's approval of the tentative tract map for the West of Fairview project, plaintiff agreed that the "fees required under the [1999 tax sharing agreement] shall be paid with each building permit." The condition of approval refers specifically to the "Developer's obligations" section of the West of Fairview development agreement as the source of responsibility for those fees.

Plaintiff and the city entered into an annexation agreement for property referred to as Ladd Ranch in 2014. Like the West of Fairview property, Ladd Ranch was in an unincorporated area set to be annexed into the city. Plaintiff committed in the annexation agreement to "ensure that the proposed development pays its own way and eliminates or minimizes the financial burden on City services and facilities created by development of the subject property." Plaintiff also agreed "to hold and use the subject property in compliance with and subject to all City ordinances, resolutions, and policies, and in compliance with all applicable provisions" of the 2011 tax sharing agreement. The Ladd Ranch annexation was approved by the county's local agency formation commission in 2014.

4

## C. LITIGATION

Plaintiff wrote to the city and the county in 2015 seeking "confirmation" that there was "no valid legal basis" for the city or the county to require plaintiff to pay the Additional Amount for any residential unit plaintiff constructs. Neither the county nor the city responded, and plaintiff commenced this litigation the following month. The complaint alleges plaintiff was "threatened with demands from either the defendant City or defendant County, or both, for payment of the unlawful 'annexation fees' as conditions of obtaining necessary development permits and approvals." The complaint alleges two causes of action. First, the complaint seeks a declaration that there is "no lawful basis for either defendant, individually or collectively, to impose, or threaten to impose and demand payment of any 'annexation fees' in any amount as a condition to issuing building permits or any other development permit or approval for the [plaintiff's] projects, and that [plaintiff's] projects may not be subjected to such fee demands or obligations." Second, the complaint alleges plaintiff was denied equal protection because similarly situated developers are not charged the Additional Amount.

The case proceeded to a court trial in 2016, and the trial court concluded that plaintiff could not be charged the Additional Amount. The county successfully moved for a new trial. The order granting a new trial vacated and set aside the first judgment and mandated that a "new trial shall be had in this action as to all issues." The trial court identified two issues as the "reasons for granting relief": plaintiff's lack of standing to challenge the tax sharing agreements, and that an applicable statute of limitations might bar plaintiff's complaint. But the order stated the court had not determined "which party may prevail on the issues to be retried." After a new trial was granted, the city cross-complained against the county alleging that the Additional Amount is not authorized by Revenue and Taxation Code section 99 and is therefore unenforceable.

The second trial occurred in 2017. The trial court ultimately found in favor of the county. The court stated it was denying the "relief requested by [plaintiff] and the City of

5

Hollister on their respective complaint[] and cross-complaint" because the court was "influenced by the arguments on statute of limitations, the limitation of actions, the validation issues." The trial court also found plaintiff had no standing to challenge the city-county tax sharing agreements because plaintiff was not a party to them. The court stated: "The city and the county entered into a contract, and the developer and city entered into contracts, and I believe that those contracts are subject to being enforced." No party requested a statement of decision. The court entered a new judgment denying "all relief to Plaintiff Award Homes as prayed for in the Complaint."

## II. DISCUSSION

Plaintiff and the county briefed the direct appeal. The city cross-appealed, but has since settled with the county and dismissed its cross-appeal. Though the city did not file a respondent's brief in the direct appeal, it filed a letter joining the county's supplemental brief regarding plaintiff's liability for the Additional Amount through plaintiff's development agreements with the city.

### A. STANDARD OF REVIEW AND SCOPE OF DECLARATORY RELIEF

"Any person interested under a written instrument ... or under a contract, or who desires a declaration of his or her rights or duties with respect to another ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... for a declaration of his or her rights and duties ... including a determination of any question of construction or validity arising under the instrument or contract." (Code Civ. Proc., § 1060.) In a declaratory relief action where, as here, the underlying facts are undisputed, we review de novo the trial court's interpretation of a written instrument. (*Hott v. College of Sequoias Community College Dist.* (2016) 3 Cal.App.5th 84, 95.) In interpreting a written instrument, we consider the instrument as a whole "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 82.)

6

The parties dispute whether various limitations statutes bar plaintiff's action for declaratory relief. Limitations " 'applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief.' " (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463.) When " 'declaratory relief is sought "before there has been a breach of the obligation in respect to which said declaration is sought," or within the statutory period after the breach, the right to such relief is not barred by lapse of time.' " (*Ibid.*) Here, plaintiff promptly sought a declaration of its rights and duties under the West of Fairview development agreement and the Ladd Ranch annexation agreement after learning that the city would attempt to collect the Additional Amount fees on units in those projects. Its action under Code of Civil Procedure section 1060 seeking declaratory relief is therefore timely as to whether the development and annexation agreements compel payment of the Additional Amount fees. And as a party to both the development agreement and the annexation agreement, plaintiff has standing to seek a declaration of its rights and duties under them.

Interpreting those agreements to determine whether plaintiff must pay the Additional Amount is a question properly before the court, but plaintiff's cause of action seeking to invalidate the Additional Amount as not having been "legally established" when the 1999 and 2011 tax sharing agreements were signed is untimely. "While the court in a declaratory relief action may properly determine questions as to rights and duties arising out of an existing contract [citations], it may not make a new contract for the parties or, in lieu of construing an existing contract, incorporate new obligations into it." (*Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 462.) Whether the Additional Amount was properly calculated when the city and county negotiated the 1999 and 2011 tax sharing agreements is also not within the scope of our review, as the issue effectively calls for this court to rewrite the annexation agreement and development agreement. Under even the most generous statute of limitations that might arguably govern a challenge to the amount of those fees (i.e., the four-year statute for actions on a contract

7

under Code of Civil Procedure section 337), plaintiff's action is untimely as to the 1999 and 2011 tax sharing agreements. Plaintiff attempts to avoid the timeliness issue by arguing the Additional Amount is void ab initio as not authorized by Revenue and Taxation Code section 99. But Revenue and Taxation Code section 99, subdivision (d) broadly authorizes counties to "develop and adopt a master property tax transfer agreement" with a local agency like the city, and we see nothing so fatally defective in the Additional Amount obligations to render their very creation void.

Because no party requested a statement of decision under Code of Civil Procedure section 632, we apply the doctrine of implied findings and presume the trial court made all necessary factual findings supported by substantial evidence. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) Plaintiff refers to findings of fact made by the trial court after the first trial that it contends were supported by the evidence. But the trial court unambiguously granted a new trial "as to all issues," which nullified any findings it had made in the first trial.

### B. WEST OF FAIRVIEW DEVELOPMENT

Plaintiff signed a development agreement for the West of Fairview project requiring it to satisfy the "Developer's obligations" from the 1999 tax sharing agreement. Plaintiff argues it is not liable for any Additional Amount because: (1) the 1999 tax sharing agreement had expired before plaintiff requested building permits; and (2) even assuming the Additional Amount obligation survived termination of the tax sharing agreement, the West of Fairview development agreement did not impose that obligation on plaintiff because the Additional Amount is a *city* obligation under the 1999 tax sharing agreement rather than a "Developer's obligation."

#### 1. The 1999 Tax Sharing Agreement Applies to West of Fairview

The 1999 tax sharing agreement was in effect from 1999 to 2010, and applied to "all those local agency boundary changes ... occurring during the applicable period of this agreement, where County is the affected county and City is the affected city." Among

8

other things, the agreement requires the city to pay the county the Additional Amount for each single family dwelling unit constructed on "property annexed as residential property within the affected territory." "The Additional Amount owed by the City to County shall accrue at the time City issues a building permit for any structure on a particular parcel of land within the affected territory."

The agreement contains two relevant trigger events: the date residential property is annexed, and the date the city issues a building permit for any structure on a particular parcel. The city becomes liable under the agreement for the Additional Amount as of the annexation date; however, the Additional Amount does not come due until the second event occurs—when the city issues a building permit. Because the West of Fairview property at issue here was annexed in 2004 while the 1999 tax sharing agreement was in effect, the city owes the county the Additional Amount for any single family dwelling unit that is ultimately constructed on the property. As the liability was incurred before the agreement expired, it is irrelevant that building permits were not issued until several years later.

Plaintiff argues that because the agreement expired in 2010, it "was no longer of any force and effect at the time of [plaintiff's] request for building permits in 2015." But nothing in the 1999 tax sharing agreement suggests that obligations created by it would cease to exist merely because a project annexed during its effective period was not constructed until after the agreement expired. The fiscal neutrality goal of the 1999 tax sharing agreement would not be served by such an interpretation because it would create an incentive to delay developing annexed property to evade paying the Additional Amount. By interpreting the 1999 tax sharing agreement as we do here, the county is certain to receive the Additional Amount for residential units constructed on land annexed during the term of the tax sharing agreement even if, as here, construction does not occur until after the agreement's expiration.

9

## 2. Plaintiff Owes the Additional Amount to the City for West of Fairview

We requested supplemental briefing about whether the phrase "Developer's obligations" in the development agreement makes *plaintiff* liable to the city for the Additional Amount. Plaintiff argues that because the Additional Amount is an obligation of the city to the county under the 1999 tax sharing agreement, it cannot be a "Developer's obligation." Plaintiff contends the reference to "Developer's obligations" in the development agreement means only the capital improvement and drainage fees discussed in the 1999 tax sharing agreement. The county (joined by the city) argues that "Developer's obligations" include the Additional Amount.

Plaintiff argues the Additional Amount is unlike the capital improvement and drainage impact fees in that the 1999 tax sharing agreement requires the city to impose the latter two fees on developers. Indeed, the Additional Amount is owed by the city to the county for each single family dwelling unit constructed within West of Fairview, while the capital improvement fee must be "imposed on all new residential construction in the City," and the drainage impact fee similarly must be imposed "on all residential and commercial development within the Santa Ana Creek Drainage area." We view this as a distinction without a difference. The 1999 tax sharing agreement requires all three fees to be imposed on new development, and we find it reasonable to conclude that the parties intended "Developer's obligations" to include the Additional Amount as well as the capital improvement and drainage impact fees.

Our conclusion is supported by the prefatory statement of intent in the development agreement that "Developer's agreement to make the dedications and commitments provided for herein, including without limitation the commitment to assure that the Development pay its own way, constitutes a material factor in City's willingness to approve and execute this Development Agreement." Interpreting the development agreement to exclude the Additional Amount without any explicit language to that effect

10

would contradict the parties' stated intent to ensure that plaintiff's development pay its own way.

The timing of payments called for by the conditions of the tentative map approval for West of Fairview also supports the interpretation that the Additional Amount fees are "Developer's obligations" under the development agreement. As a condition of approval, plaintiff agreed that "fees required under the [1999 tax sharing agreement] shall be paid with each building permit." The 1999 tax sharing agreement uses the identical trigger for payment of the Additional Amount, which "shall accrue at the time City issues a building permit" for a residential structure on the property.

Plaintiff also argues that the Additional Amount fees are different from the capital improvement fees because the 1999 tax sharing agreement requires the city to pay the Additional Amount and provides the county a remedy to withhold the city's property tax allocation if the city does not do so. Plaintiff contends that if "the Additional Amount was to be a developer's obligation, then the [Development] Agreement would have also provided for alternative remedies against the developer for nonpayment to the City." But plaintiff overlooks that the 1999 tax sharing agreement provides for the same remedy if the city does not pay the capital improvement fee. The 1999 tax sharing agreement states that "paragraph 6 [regarding the county's ability to withhold property taxes] shall apply to this supplemental amount" of capital improvement fees. That the 1999 tax sharing agreement provides the same remedy in relation to both the capital improvement fee and the Additional Amount further supports uniform treatment as Developer's obligations under the development agreement.

Plaintiff appears to suggest that because the Additional Amount is not referred to as a "fee" in the 1999 tax sharing agreement, it cannot be treated the same as the capital improvement and drainage fees under the development agreement. But the development agreement does not use the term "fees" at all and instead requires plaintiff to satisfy the "Developer's obligations." That the Additional Amount is not referred to as a fee in the

11

1999 tax sharing agreement is therefore of no consequence in interpreting the development agreement.

Plaintiff points to section 8.4 of the development agreement, which states: "No third party who is not a party hereto or a successor or assign of a party hereto, may claim the benefits of any provision hereof, and any party who is in fact so benefitted shall have no rights greater than those that would be held by any member of the public affected by such actions or enactments without regard to this Development Agreement." Plaintiff contends that because the county is not a party to the development agreement, the "County's claim that the developer, under the terms of the development agreement, is required to pay to the County the Additional Amount is expressly precluded by" the development agreement. Whether or not plaintiff has any obligation to pay the Additional Amount directly to the *county*, the distinction does not absolve plaintiff of the obligation to pay the Additional Amount to the *city*.

The county relies heavily on the development agreement's Pay its Own Way provision, which applies to official enactments by the city of "any provision of the City's General Plan, any City ordinance, any part of the City municipal code or any resolution or other official enactment of the City which is adopted for the purpose of assuring that development in the City ... will generate revenues adequate ... to fully pay for all costs of the City associated with or anticipated to result from such development." (2 JA 397-398.) Because we conclude that plaintiff is responsible for the Additional Amount as a "Developer's obligation" under the development agreement, we need not decide whether the "Pay its Own Way" provision from the development agreement provides an independent basis for requiring plaintiff to pay the Additional Amount.

By the terms of the West of Fairview development agreement, plaintiff must pay to the city the Additional Amount (calculated according to the 1999 tax sharing agreement) for each residential unit in the West of Fairview project.

12

## C. LADD RANCH DEVELOPMENT

Plaintiff agreed in the Ladd Ranch annexation agreement to "hold and use the subject property in compliance with and subject to all City ordinances, resolutions, and policies, and in compliance with all applicable provisions" of the 2011 tax sharing agreement between the city and the county. We requested supplemental briefing about whether the Additional Amount is an "applicable provision" of the 2011 tax sharing agreement. (We note that the Ladd Ranch property was annexed in 2014 during the applicable term of the 2011 agreement, and therefore the city must pay the county the Additional Amount for any residential structure built in the Ladd Ranch development according to the terms of the 2011 tax sharing agreement.)

Plaintiff argues that the annexation agreement's reference to "applicable provisions" of the 2011 tax sharing agreement must mean only the capital improvement and drainage impact fees because those fees are the only provisions in the tax sharing agreement "which indisputably apply to the developer." The argument is premised on the same reasoning as plaintiff's arguments about the West of Fairview agreement, and it fails for the same reason: none of the fees "indisputably apply to the developer," and the three fees are sufficiently similar to support the conclusion that the Additional Amount section is an "applicable provision" of the 2011 tax sharing agreement as referenced in the Ladd Ranch annexation agreement. Our conclusion is also consistent with plaintiff's promise in the annexation agreement to "ensure that the proposed development pays its own way and eliminates or minimizes the financial burden on City services and facilities created by development of the subject property." If plaintiff were not responsible for the Additional Amount, the Ladd Ranch development would not pay its own way because the city would bear the cost of those fees ultimately paid to the county.

By the terms of the Ladd Ranch annexation agreement, plaintiff must pay to the city the Additional Amount (calculated according to the 2011 tax sharing agreement) for each residential unit in the Ladd Ranch project.

13

### III. DISPOSITION

The judgment is affirmed. Plaintiff must pay to the city the applicable Additional Amount for residential units constructed in the West of Fairview and Ladd Ranch developments. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Grover, J.

**WE CONCUR:**


_____
Greenwood, P. J.


_____
Danner, J.


**H044894 -** *Award Homes, Inc. v. County of San Benito et al.*

Filed 12/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AWARD HOMES, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN BENITO et al.,<br><br>    Defendants and Respondents. | H044894<br>(San Benito County<br> Super. Ct. No. CU1500099)<br><br>ORDER GRANTING REQUEST FOR<br>PUBLICATION |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter filed on November 1, 2021, shall be certified for publication.

Dated:                                     _____

                                                Greenwood, P. J.

                                  _____

                                                Grover, J.

                                  _____

                                                Danner, J.

| Trial Court: | San Benito Superior Court<br>Case No. CU15000999 |
|---|---|
| Trial Judge: | Hon. Harry J. Tobias |
| Counsel for Plaintiff/Appellant<br>AWARD HOMES, INC. | Norman E. Matteoni<br>  Matteoni, O'Laughlin & Hechtman<br><br>David P. Lanferman<br>  Rutan & Tucker, LLP |
| Counsel for Defendant/Respondent<br>COUNTY OF SAN BENITO | Barbara Jeanne Thompson<br>  Office of the County Counsel<br>  County of San Benito<br><br>Michael George Colantuono<br>Ryan Thomas Dunn<br>  Colantuono, Highsmith & Whatley, PC |
| Counsel for Defendant/Respondent<br>CITY OF HOLLISTER | Jason Stuart Retterer<br>  Johnson, Rovella, Retterer, Rosenthal & Gilles,<br>  LLP<br><br>Paul Anthony Rovella<br>  JRG Attorneys at Law |

H044894 – *Award Homes, Inc. v County of San Benito et al.*