[No. D043702. Fourth Dist., Div. One. Apr. 11, 2005.]

STEPHEN F. SNOW, Plaintiff and Appellant, v.
JEANNE S. WOODFORD, as Director, etc., Defendant and Respondent.

**COUNSEL**

Stephen F. Snow, in pro. per., for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Robert A. Anderson and Frances T. Grunder, Assistant Attorneys General, Julie L. Garland, Michelle A. Des Jardins and Heather Bushman, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**O'ROURKE, J.**—Stephen F. Snow filed a petition for writ of mandate to require the California Department of Corrections (Department) to rescind a regulation prohibiting inmates from possessing sexually explicit materials, combined with a request for declaratory relief to declare the regulation violates the federal and California constitutions and Penal Code section 2601, subdivision (c). Snow appeals the order dismissing the petition and request for declaratory relief, contending (1) the regulation violates the First Amendment and (2) the regulation violates Penal Code section 2601, subdivision (c). We affirm.

### FACTUAL AND PROCEDURAL HISTORY

On July 10, 2002, Department issued a policy prohibiting inmates from possessing or receiving materials showing the frontal nudity of either gender. Frontal nudity is defined as "including either the exposed female breast(s) and/or genitalia of either gender." In issuing this policy, Department relied upon *Mauro v. Arpaio* (9th Cir. 1999) 188 F.3d 1054 (*Mauro*) (en banc), which upheld the constitutionality of a similar Arizona policy.[1] On July 18, 2002, officials at Richard J. Donovan Correctional Facility (Donovan), where

---

[1] The Arizona policy also prohibits sexually explicit materials and defines them as " 'materials that show frontal nudity.' " (*Mauro, supra*, 188 F.3d at p. 1057.)

Snow was housed, issued a letter notifying inmates that the ban would go into effect on September 9, 2002.

In September 2002, Department issued a notice of adoption of emergency regulations (the Notice) to amend title 15 California Code of Regulations, section 3006[2] by adding subdivision (c)(17), which bans possession of the following:

"(17) Sexually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines, or other pictorial format.

"(A) Sexually explicit material shall be defined as material that shows the frontal nudity of either gender, including the exposed female breast(s) and/or the genitalia of either gender.

"(B) The following sexually explicit material shall be allowed:

"1. Departmentally purchased or acquired educational, medical/scientific, or artistic materials, such as books or guides purchased by the department for including in institution libraries and/or educational areas; or

"2. Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis."

In the Notice, Department analyzes the amendment to section 3006 as follows: "This regulation will aid in the legitimate penological interests of maintaining the safety and security of the prisons, rehabilitating inmates, reducing sexual harassment of correctional officers and preventing a hostile work environment. Sexually explicit materials, within institutions, have contributed to an increase of verbal assaults and have led to intimidation of female correctional staff when attempting to perform cell searches. Inmates subject female correctional staff to a daily barrage of unwarranted sexual advances, thus causing an uncomfortable working environment and continued confrontation with inmates. [¶] Additionally, unrestricted access to sexually explicit material could lead to bartering between inmates and anatomical comparisons could lead to fights between inmates thereby jeopardizing the safety of prison staff and other inmates." The amendment was adopted on March 18, 2003.

---

[2] All further regulatory references are to title 15 of the California Code of Regulations unless otherwise specified.

On August 15, 2002, Snow filed a petition for writ of mandate to require Department to rescind the ban on possession of sexually explicit materials, combined with a request for declaratory relief to declare the ban violates the federal and California constitutions and Penal Code sections 2601, subdivision (c). On November 15, 2002, Snow filed an administrative appeal challenging the confiscation of his magazine pictures of nude women. Department denied the first level appeal on December 19, 2002, and the second level appeal on February 13, 2003.

Because Snow repeatedly failed to effect service of the petition, the court issued a series of orders to show cause as to why the case should not be dismissed. In response to the first of those orders, Snow filed a memorandum of points and authorities as to why the case should not be dismissed. Among the exhibits Snow attached to the memorandum are pictures of women with exposed breasts, including a picture Snow drew and the cover of an issue of New Yorker magazine showing cartoon drawings of Greek goddesses. Snow also attached an art photograph of a nude woman and an issue of a pornographic magazine entitled OnLine. On November 26, 2003, the court acknowledged Snow's untimely service on Department and rescheduled the hearing on the petition and request for declaratory relief.

On November 7, 2003, Snow filed a memorandum of points and authorities in support of the petition and request for declaratory relief. Department filed an opposition, arguing the amendment is constitutional because it serves a legitimate penological interest. In his reply, Snow included as an exhibit a Time magazine article containing a photograph of a painting of a nude woman.

After a hearing, the court denied Snow's petition for writ of mandate and request for declaratory relief, concluding the regulation is reasonably related to a legitimate penological interest, in that: "(1) there is a valid rational connection between restricting sexually explicit materials within prison and the interest in preserving [institutional] security and preventing sexual harassment; (2) Petitioner has alternative means of expression available to him; (3) allowing the sexually explicit material will have a negative impact on other inmates and correctional staff; and (4) the policy is not an exaggerated response to officials['] concerns." The court denied Snow's request for declaratory relief because it "is premised on the same arguments." This appeal followed.

## DISCUSSION

### I.  *Constitutionality of Section 3006*

██  We review de novo "a constitutional challenge to the facial validity of a prison policy." (*In re Collins* (2001) 86 Cal.App.4th 1176, 1181 [104 Cal.Rptr.2d 108].) In order to withstand a constitutional challenge, including a First Amendment challenge, a prison regulation must be "reasonably related to legitimate penological interests."[3] (*Turner v. Safley* (1987) 482 U.S. 78, 89 [96 L.Ed.2d 64, 107 S.Ct. 2254] (*Turner*).) The United States Supreme Court developed this standard by acknowledging "two basic and potentially competing principles." (*Mauro, supra,* 188 F.3d at p. 1058.) First, "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." (*Turner,* at p. 84.) Second, " 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " (*Ibid.*)

██  The Court developed a four-pronged test (the *Turner* test) to determine whether a prison regulation or policy is reasonably related to legitimate penological interests: "(1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally; and (4) whether the policy is an 'exaggerated response' to the [prison's] concerns." (*Mauro, supra,* 188 F.3d at pp. 1058–1059, citing *Turner, supra,* 482 U.S. at pp. 89–90.)

### A.  *First Prong of the Turner Test*

██  In order to determine whether there is a rational connection between a prison regulation and a governmental interest justifying the regulation, a court must find the following: (1) the governmental interest is legitimate; (2) the governmental interest is neutral; and (3) the logical connection between the regulation and the interest is close enough to be rational and not arbitrary. (*Turner, supra,* 482 U.S. at pp. 89–90.)

---

[3] The Legislature adopted the *Turner* rule when it amended Penal Code section 2600 to provide in part: "A person sentenced to imprisonment in a state prison may during that period of confinement be deprived of such rights, and only such rights, as is *reasonably related to legitimate penological interests.*" (Pen. Code, § 2600, italics added; see *People v. Loyd* (2002) 27 Cal.4th 997, 1008 [119 Cal.Rptr.2d 360, 45 P.3d 296].)

■ We first determine whether Department's interests are legitimate. Here, the Notice defined those interests as "maintaining the safety and security of the prisons, rehabilitating inmates, reducing sexual harassment of correctional officers and preventing a hostile work environment." Many cases have found that prison safety and security are legitimate penological interests. (See, e.g., *Turner, supra,* 482 U.S. at p. 91; *In re Collins, supra,* 86 Cal.App.4th at pp. 1184–1185.) Rehabilitation and the prevention of sexual harassment are also legitimate penological interests. (*Mauro, supra,* 188 F.3d at p.1059.)

■ We next determine whether the regulation is neutral. In order to be neutral, " 'the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.' " (*Thornburgh v. Abbott* (1989) 490 U.S. 401, 415–416 [104 L.Ed.2d 459, 109 S.Ct. 1874] (*Thornburgh*), fn. omitted.) Prison regulations enacted to enhance prison security are neutral. (*Ibid.*) In the Notice, Department states it enacted the regulation because sexually explicit materials had contributed to sexual advances towards and the intimidation of female correctional staff, and such materials could lead to fights based upon anatomical comparisons. These reasons are unrelated to the suppression of expression and are related to the enhancement of prison security. (*Mauro, supra,* 188 F.3d at p. 1059.) Accordingly, the regulation is neutral.

■ Finally, we must determine if there is a rational relationship between the regulation and the penological interest. "To show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future. [Citations.] Moreover, it 'does not matter whether we agree with' the defendants or whether the policy 'in fact advances' the jail's legitimate interests. [Citation.] The only question that we must answer is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." (*Mauro, supra,* 188 F.3d at p. 1060.) We agree with the Ninth Circuit's analysis of the Arizona regulation upon which Department based this regulation: "The relationship between the . . . policy of prohibiting the possession of sexually explicit materials and the goals of preventing sexual harassment of the female officers, inmate rehabilitation and maintenance of . . . security is not so 'remote as to render the policy arbitrary or irrational.' " (*Ibid.*) We conclude there is a rational connection between the regulation and the governmental interest. Accordingly, the first prong of the *Turner* test is met.

■ Snow contends the first prong of the *Turner* test is not met because Department was required but failed to produce evidence of a rational connection between section 3006, subdivision (c)(17) and Department's interests. We disagree because Department must produce such evidence *only* in response to an inmate's evidence refuting the connection: "When the inmate presents sufficient (pre or post) trial evidence that refutes a common-sense connection between a legitimate objective and a prison regulation, . . . the state must present enough counter-evidence to show that the connection is not so 'remote as to render the policy arbitrary or irrational.' [Citations.] On the other hand, when the inmate does not present enough evidence to refute a common-sense connection between a prison regulation and the objective that government's counsel argues the policy was designed to further, *Mauro* applies and, presuming the governmental objective is legitimate and neutral [citation], *Turner's* first prong is satisfied." (*Frost v. Symington* (9th Cir. 1999) 197 F.3d 348, 357.)

Here, Snow submitted evidence that prison authorities confiscated a book entitled Drawing, which contains nudity on certain pages, but did not submit copies of those pages. Although he also submitted a New Yorker magazine cover—a cartoon containing pictures of Greek goddesses, each with one unclothed breast, a Time magazine article with one photograph of a work of art showing a nude woman, and an art photograph of a nude woman, he submitted no evidence that these were confiscated by Department. The evidence presented is insufficient to refute the common sense connection between sexually explicit images and the sexual harassment of female correctional officers and other security problems. Accordingly, Department was not required to present evidence to substantiate the connection between sexually explicit images and its legitimate interests.

### B. *The Last Three Prongs of the Turner Test*

■ The second prong of the *Turner* test is whether there are alternative means of exercising the right. "Where 'other avenues' remain available for the exercise of the asserted right [citation], courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.' " (*Turner, supra,* 482 U.S. at p. 90.) In applying this factor, "the right in question must be viewed sensibly and expansively." (*Thornburgh, supra,* 490 U.S. at p. 417.) We agree with the Ninth Circuit that the constitutional right infringed is the " 'right to receive sexually explicit communications.' " (*Mauro, supra,* 188 F.3d at p. 1061.) Here, the regulation bans pictures of exposed breasts and genitalia,

but it does not ban sexually explicit writings or sexually provocative pictures of clothed persons. Further, the regulation does not ban sexually explicit pictures if they are contained in medical texts, art reference books, National Geographic, and books purchased for prison libraries and prison educational programs. (§ 3006, subd. (c)(17)(B).) Accordingly, inmates have an alternative means of expression.

The third prong asks whether the accommodation of the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally. We give "considerable deference to the determination of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." (*Thornburgh, supra*, 490 U.S. at p. 408.) Here, Department found that inmates' possession of sexually explicit materials has had a negative impact on female correctional officers because it has led to verbal abuse and intimidation. Further, Department believes such possession could lead to fights between inmates, which would have a negative impact on inmates and correctional officers. Snow has presented no evidence or argument to refute Department's findings in this regard. Accordingly, the third prong is met.

The fourth prong asks whether the regulation is an exaggerated response to Department's concerns. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation. [Citation.] By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns. This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. [Citation.] But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." (*Turner, supra*, 482 U.S. at pp. 90–91.) The inmate challenging the regulation has the burden to show there are obvious, easy alternatives to the regulation. (*Id.* at p. 91; *Mauro, supra*, 188 F.3d at p. 1062.) Snow failed to show any alternatives to the regulation, so he has not met his burden. Accordingly, the regulation does not violate Snow's First Amendment rights because it meets the four-pronged *Turner* test.

## II. *Penal Code Section 2601*

In his request for declaratory relief, Snow contends section 3600 violates Penal Code section 2601 because it bans materials that are not obscene. We review de novo "purely legal issues such as statutory interpretation." (*Santa Margarita Area Residents Together v. San Luis Obispo County*

*Bd. of Supervisors* (2000) 84 Cal.App.4th 221, 228 [100 Cal.Rptr.2d 740].) " '[W]hile the construction of a statute by officials charged with its administration . . . is entitled to great weight, nevertheless, 'whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' [Citation.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' " (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2].)

Penal Code section 2601, subdivision (c)(1) provides in part that prisoners have the following right: "To purchase, receive, and read any and all newspapers, periodicals, and books accepted for distribution by the United States Post Office. Pursuant to this section, prison authorities may exclude any of the following matter:

"(A) Obscene publications or writings, and mail containing information concerning where, how, or from whom this matter may be obtained.

"(B) Any matter of a character tending to incite murder, arson, riot, violent racism, or any other form of violence."[4]

We are not persuaded by Snow's reliance upon *In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640]. In *Harrell*, the court struck down a prison ban on publications advocating the use of narcotics as part of a prison order banning "criminal techniques which tend to incite the commission of misdemeanors or felonies." (*Id.* at pp. 699, fn. 24, 703–704.) The court held that Penal Code section 2601 did not allow prison authorities to ban writings that were not " 'conducive to rehabilitation.' " (*Harrell*, at p. 703.) However, prison authorities could ban the same writings under Penal Code section 2601, subdivision (c)(1)(B) if they found such writings "might have a tendency to incite violent situations." (*Harrell*, at p. 704.) Here, among the reasons Department enacted the regulation are the prevention of the intimidation and sexual harassment of female correctional officers by inmates and the prevention of violence between inmates based on anatomical comparisons. These reasons fall squarely under the Penal Code section 2601, subdivision (c)(1)(B) exception. Accordingly, the regulation does not violate Penal Code section 2601.

---

[4] We grant Snow's request for judicial notice of Senate Bill No. 1768 (Reg. Sess. 2003–2004), but find it inapplicable because although the bill as introduced contained an amendment to Penal Code section 2601, the bill as chaptered contained no such amendment.

## DISPOSITION

The order dismissing the petition for writ of mandate and request for declaratory relief is affirmed.

McConnell, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 2005.