Filed 3/3/25  Mulberg v. Amster CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK MULBERG,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>PATRICIA AMSTER,<br><br>     Defendant and Respondent. | A169032<br><br>(Marin County<br>Super. Ct. No. CIV 1703628) |

Plaintiff Frank Mulberg, a licensed attorney appearing in propria persona, appeals from a judgment entered in favor of defendant Patricia Amster after the court rejected his cause of action for breach of contract and his common counts for "account stated" and "open book account."  We affirm.

I.

BACKGROUND

The parties have spent years litigating their disputes, and we restate at length some of the relevant background, which we described in an earlier appeal:[1]  "Amster hired Mulberg from 2008 to 2012 to help her with matters related to an anticipated inheritance.  During this time, Amster paid Mulberg for some, but not all, of the attorney fees incurred.

---

[1] We grant Mulberg's December 26, 2024 request for judicial notice of various filings from his previous appeals.

1

"When her mother died in 2011, Amster inherited property titled in a trust and, with the apparent authority to do so, she appointed Mulberg as trustee.  It is uncontested that . . . Mulberg used trust funds to pay himself the attorney fees that Amster incurred in her individual capacity.  Specifically, Mulberg used trust assets to pay himself $35,000 in October 2011 and $27,819.75 in January 2012.  The total amount was $62,819.75, which we, as do the parties, round to $62,820.  After Mulberg made these payments to himself, he sent Amster a statement in April 2012 notifying her that her individual attorney fees had been paid in full.

"In 2013, the parties' relationship deteriorated, and in 2014 probate proceedings were initiated, with Amster petitioning to remove Mulberg as trustee, and Mulberg cross-petitioning to challenge Amster's right to remove him and to seek approval of the estate's accounts.  A probate trial was held in 2015, and one of the main issues was whether Mulberg had paid himself excessive trustee fees, which the evidence showed amounted to around $500,000.  In its ruling, the probate court removed Mulberg as trustee, approved a trustee fee for him of $227,897.59, representing '1% of the total trust corpus per annum,' and ordered him to return—in what the parties refer to as a 'surcharge'—more than $200,000 to the estate.

"Mulberg appealed, and we affirmed the probate court's decision. (*Amster v. Mulberg* (Nov. 18, 2016, A146374) [nonpub. opn.].)  Mulberg thereafter reimbursed the estate the amount ordered, with interest.  He then sent Amster a new bill for the $62,820, plus interest.  After Amster refused to pay, Mulberg filed this suit.  In his complaint, he asserted six causes of action:  promissory fraud, breach of contract, account stated, open book account, quantum meruit, and unjust enrichment.  Amster answered with a general denial, and she also asserted 33 affirmative defenses.

2

"After a bench trial, the trial court ruled against Mulberg on all his causes of action, and it therefore did not consider Amster's affirmative defenses." (*Mulberg v. Amster* (July 14, 2021, A158954 [nonpub opn.]), fn. omitted.) (*Mulberg II*).) Mulberg appealed the trial court's ruling, and we affirmed in part and reversed in part. We affirmed the judgment as to the claims for fraud, quantum meruit, and unjust enrichment. But we reversed the judgment as to the breach-of-contract claim and the common counts of "account stated" and "open book account," remanding for further proceedings, including a consideration of Amster's affirmative defenses.

On remand, the parties agreed to have the claims tried on the record, and the trial court issued a 21-page statement of decision rejecting Mulberg's common counts and finding that, although Mulberg presented a prima facie case of breach of contract, his claims failed because of the affirmative defenses of the statute of limitations and the doctrine of unclean hands.

## II.
### DISCUSSION

### A. *The Standards of Review.*

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. The general rule is that " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Accordingly, " 'in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

3

We review factual determinations for substantial evidence. In doing so, "[o]ur authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631.) "Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn. We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment." (*Id.* at p. 631.)

"[A]n appellate court does not evaluate the credibility of the witnesses or otherwise reweigh the evidence. [Citation.] Rather, 'we defer to the trier of fact on issues of credibility.' [Citation.] 'If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed.' " (*Greisman v. FCA US, LLC* (2024) 103 Cal.App.5th 1310, 1322.) "Our job is only to see if substantial evidence exists to support the [decision] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

To the extent the trial court's determinations rest on purely legal issues, our review is de novo. (*Snow v. Woodford* (2005) 128 Cal.App.4th 383, 393.)

B.    *The Trial Court Did Not Err in Applying the Doctrine of Unclean Hands to Bar Mulberg's Claims.*

On remand, the trial court rejected the common counts, but it found that Mulberg established a prima facia case for a breach of contract because Amster had orally agreed to pay Mulberg his attorney fees and the fees remained unpaid. It nonetheless denied Mulberg relief, concluding that his claims were barred because of both the applicable statute of limitations and the doctrine of unclean hands. Because we conclude that the court properly rejected Mulberg's claims based on the doctrine of unclean hands, we need not address Mulberg's appellate contentions that the court otherwise erred in rejecting the breach of contract claim and common counts.

The doctrine of unclean hands "rests on the maxim that ' " 'he who comes into equity must come with clean hands.' " ' [Citation.] 'The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. [The plaintiff] must come into court with clean hands, and keep them clean, or [the plaintiff] will be denied relief, regardless of the merits of [the] claim.' " (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110.) The doctrine "applies when it would be unfair for the plaintiff to profit from his or her wrongdoing, even assuming the defendant might otherwise be liable, at least in part, for the losses sustained by the plaintiff." (*Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 845.) And it applies to legal as well as equitable claims and to both tort and contract remedies. (*Camp v. Jeffer, Mangles, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638; see also *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 620.)

The unclean hands doctrine protects not only parties' interests, but also the courts' interests. The doctrine "protects judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean

5

hands to recover in an action creates doubts as to the justice provided by the judicial system. . . . The doctrine promotes justice by making a plaintiff answer for his [or her] own misconduct in the action. It prevents 'a wrongdoer from enjoying the fruits of his [or her] transgression.' " (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 (*Kendall-Jackson*).)

Employing what is sometimes referred to as the "*Blain* test," courts use a "three-pronged test to determine the effect to be given to the plaintiff's unclean hands conduct. Whether the particular misconduct [at issue] is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." (*Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979, citing *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1060 (*Blain*).) Our standard for reviewing the application of the *Blain* test comports with the general standard of review we have already described. We independently review the first prong of the test—analogous case law—as it presents a legal question. (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 436–439.) But we review the second and third prongs—the nature of the misconduct and its relationship to the claimed injuries—for substantial evidence when they turn on the trier of fact's factual determinations. (*Ibid.*)

Starting with the first prong, the parties have identified no analogous case law supporting either of their positions. Amster's brief is especially unhelpful as it fails to discuss the trial court's rationale for its application of the unclean hands doctrine, much less the *Blain* test in particular.[2] And while Mulberg points out that the trial court failed to cite analogous case law

---

[2] Amster's appellate brief mostly argues that Mulberg's claims fail because the attorney fees were paid. We specifically addressed and rejected this argument in our last decision in this case, *Mulberg II*.

in applying the doctrine, he provides no analogous case law to support his contention that the doctrine's application was improper.

Our independent research has found no authority directly on point, but one Ninth Circuit case stands for the general proposition that applying the doctrine of unclean hands is permissible to prevent an attorney who has engaged in wrongdoing from profiting in a financial dispute with their client, even though the client also engaged in wrongdoing. (*Northbay Wellness Group, Inc. v. Beyries* (9th Cir. 2015) 789 F.3d 956, 961.) In that case, the court applied the doctrine to prevent an attorney who had misappropriated a client's funds from discharging in bankruptcy a debt owed to that client. Mulberg's wrongdoing here may not have been as egregious as the attorney's wrongdoing in *Beyries*, but, as we discuss below, it was still significant, and in California "[a]ny conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." (*Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979.)

This leads us to the second prong of the *Blain* test: the nature of the misconduct. Although Mulberg in his appellate briefs addresses the *Blain* test generally, he largely ignores the trial court's factual determinations about the nature of his misconduct, which were thoughtful and withering. According to the trial court, "All the difficulties in this case arise from Mulberg's inequitable conduct. Mulberg breached multiple fiduciary duties, used trust funds to pay money owed him personally, charged the trust for multiple services in violation of law, and failed to properly account for funds and services. After retaining trust funds for years and unsuccessfully litigating the probate action through appeal, Mulberg now seeks to turn back the clock years to recover funds he improperly received in the first place. From the Court's perspective, Mulberg is attempting to have the client

7

indemnify him for his own mistakes." These findings are supported by substantial (and largely undisputed) evidence.

In discussing the nature of Mulberg's wrongdoing, the court began by noting that while the parties "may have believed that the debt had been satisfied by payments from the trust, there is no basis in equity to blame Amster for any misunderstanding. As between the parties, Mulberg was the party with superior knowledge of the legal requirements of the relationship; he was both an experienced attorney and a fiduciary charged with properly (and legally) administering the trust. [He] should have known that the estate assets were being 'improperly used in a failed attempt to pay off the obligation,' particularly when only a minimal amount of research would have illuminated the infirmities with the arrangement."

The trial court went on to find that "[e]ven if [Mulberg] had a legitimate excuse for not being aware of the rules before [Amster's petition in the probate proceeding was filed] (a doubtful proposition), once it was filed, he should have recognized that the payments to himself for past attorney fees were improper. He could have returned the disputed fees to the trust and initiated any action to collect [them]." As Mulberg admits, Amster testified at the trial in the probate proceedings "that she never consented" to using trust assets to pay the attorney fees obligation.

Mulberg attempts to minimize his wrongdoing by focusing only on his use of trust funds to pay himself the attorney fees that Amster incurred in her individual capacity, and by arguing that it was done with Amster's acquiescence. But we need not decide if that conduct alone would have been sufficient for the application of the doctrine, because the trial court did not rely exclusively on it when it ruled that Mulberg's hands were unclean. The court also found that Mulberg billed the trust excessive amounts, provided

8

Amster with confusing invoices that a reasonable client would not be able to understand, and litigated (instead of promptly remedying) the billing problems and overcharges. We agree with the trial court that the nature of Mulberg's misconduct in its entirety was significant and warranted the application of the doctrine.

Finally, under the third prong of the *Blain* test, there is a direct relationship between the misconduct to the claimed injuries. In his appellate briefing, Mulberg argues that Amster has shown no prejudice. But he ignores the trial court's findings to the contrary. To begin with, it found that "Mulberg was unable to explain with any specificity the benefits he conferred on Amster for his work as her personal counsel." While there was "a plethora of invoices, Mulberg did not deliver a bill in the regular course of business that expressly indicated a balance 'due and owing,'" "no complete statement of account as to fees earned as [Amster's] personal counsel was ever provided," and the invoices that were provided were "incomplete and confusing," providing "only vague descriptions of the services provided" and failing to distinguish between charges for Amster's personal legal services and charges for trust services. As we have mentioned, the court found that "[a] client receiving these invoices, with their terse descriptions of multiple activities, would not reasonably be able to determine what amounts were owed for personal legal services." The court succinctly found that in light of these circumstances "the passage of time has prejudiced Amster's ability to contest the amounts that Mulberg contends he was owed."

In short, the court found that Mulberg's misconduct directly related to, and made more difficult, Amster's ability to challenge the amounts owed for attorney fees. We discern no error in the court's findings or analysis.

## III.

### DISPOSITION

Mulberg's December 26, 2024 request for judicial notice is granted.

The trial court's judgment is affirmed.  Amster is awarded her appellate costs.

_____
Humes, P.J.

WE CONCUR:


_____
Banke, J.


_____
Smiley, J.

*Mulberg v. Amster*  A169032

11