Filed 8/11/25  Tulare County Sheriff's Office v. Superior Court (Sanchez) CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TULARE COUNTY SHERIFF'S OFFICE,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>    Respondent;<br><br>PEDRO SANCHEZ,<br><br>    Real Party in Interest. | F084872<br><br>(Super. Ct. No. VCF344700A)<br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; petition for peremptory writ of mandate. Juliet L. Boccone, Judge.

Jennifer Flores, County Counsel, Kathleen A. Taylor and Andrew K. Haller, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Law Office of Marcus Torigian and Marcus A. Torigian for Real Party in Interest.

-ooOoo-

The Tulare County Superior Court issued an order that effectively granted a paralegal, who was working for a defense attorney representing defendant Pedro Sanchez, unmonitored access to county jail inmate Sanchez by telephone or video calls, to assist the defense attorney in his preparations for trial. Defendant and the paralegal were alleged members of the same criminal gang network, codefendants in the same case, and were both housed in facilities run by the Tulare County Sheriff's Office at the same time, before the paralegal's release and employment as a paralegal. The Tulare County Sheriff's Office (petitioner) brought this writ petition challenging the trial court's order. Following our review of the record and the relevant legal authorities, we grant the writ of mandate and direct the trial court to vacate its order which allowed the paralegal to have confidential attorney client communications with defendant. Instead, we direct the trial court to enter a new order specifically denying paralegal Rigoberto Benavidez any access to Sanchez in this case.

## PROCEDURAL AND FACTUAL SUMMARY

*Background*

Benavidez and defendant Sanchez are, or were, both alleged Norteño Soldados and members of the Nuestra Familia criminal organization. Sanchez is alleged to have been an upper level "shot caller" who could authorize criminal activity by members of the gang. Both Benavidez and Sanchez were indicted for numerous felonies involving gang activity in December 2016, following a "gang sweep" in Tulare County. While charged in the same document, it does not appear Benavidez and Sanchez were ever charged as codefendants in any of the specific counts alleged.

Benavidez was charged with 14 different counts in the charging document. These counts consisted of seven counts of conspiracy to commit a crime (Pen. Code,[1] 182, subd. (a)(1)), four counts of criminal street gang conspiracy (§ 182.5), one count of attempted

---

[1]    All further statutory references are to the Penal Code.

murder (§§ 664/187, subd. (a)), one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and one count of possessing an assault weapon (§ 30605).[2] The charging document also included special allegations detailing Benavidez's four prior felony convictions.

On January 19, 2022, Benavidez received a certificate for completing paralegal studies. On January 26, 2022, Benavidez pled no contest to four counts — a felon in possession of a firearm, possession of an assault weapon, and two counts of conspiracy to commit a crime. Benavidez also admitted the special allegations addressing his prior felony convictions. Benavidez was sentenced to time served on March 28, 2022.

*Denial of Access to County Jail*

After his release, Benavidez was hired by Marcus Torigian, Sanchez's trial attorney, to work as a paralegal on Sanchez's case, which would include attorney-client communications with Sanchez. Torigian sought permission to have Benavidez meet with Sanchez in the jail in his role as a paralegal. Petitioner denied the request for unmonitored access between Benavidez and Sanchez.

*Motion for Access and Response*

On July 21, 2022, Sanchez filed a "Notice of Motion and Order to Show Cause" seeking an order directing petitioner to grant unmonitored and unfettered access to all members of the defense team, including Benavidez. The moving papers listed at least two instances in March 2022 when Benavidez was denied meetings with Sanchez in his role as a paralegal. Petitioner filed its opposition to the motion noting that while Benavidez was in prison, he was alleged to have engaged in criminal activity including crimes committed on behalf of a gang. Evidence was also received showing Benavidez had violated various rules while he was in custody awaiting a trial of the charges brought

---

[2] The record does not contain the actual document charging these crimes. This information is taken from petitioner's opposition papers filed in the trial court.

3.

against him.  The trial court heard arguments on the motion on August 11, 2022, and took the matter under submission.

*Court Order on Access*

On August 26, 2022, in open court, the court denied Sanchez's motion for unfettered and unmonitored in-person access, but permitted "visits through other means that don't present the safety issues the Sheriff's Department is concerned about," such as using telephones or video calls.  The court expressed its concern that Benavidez's physical presence in the jail facility might result in a risk of harm to inmates, deputies, and the public in general.  The court explained it did not believe the restriction on Benavidez's access violated Sanchez's Sixth Amendment right to counsel, since there are other ways defense counsel can communicate with his client.  After defense counsel made further inquiry, the court explained it was not prohibiting Benavidez and Sanchez from engaging in attorney-client communications, only prohibiting Benavidez's personal visitation in the jail.  An amended order entered into the court record on August 29, 2022, stated, "[c]ourt denies [d]efense request for [d]efense team having *personal* access to the defendant in jail."  (Italics added.)

*Sheriff's Petition to Restrict Any Communication between Sanchez and Paralegal Benavides*

In response to the trial court's order, Sheriff/Petitioner filed a petition for peremptory writ of mandate and immediate stay with this court on September 2, 2022. Petitioner challenged the trial court's order permitting unmonitored attorney-client protected telephonic or video communications between Benavides and Sanchez. Petitioner raised new grounds not previously presented at the August 11, 2022 hearing: allowing confidential exchange of communications between Benavides and Sanchez as alleged members of the same gang, to freely exchange such information, and providing instructions and orders to carry out activities in furtherance of the Nuestra Familia

organization that could result in facilitating crimes and coercing individuals that would endanger the general public, sheriff deputies, and other inmates.

*Stay Issued*

This court issued an immediate stay on September 2, 2022, of the trial court's August 26, 2022 order, as amended on August 29, 2022. This stay order further directed defendant Sanchez to file an informal response to the petition and allowed for the filing of a reply to that informal response.

*Status of Underlying Case*

The case against Sanchez is still pending in the trial court, and he remains in custody of the Tulare County Sheriff. The temporary stay preventing Benavidez from conducting any unmonitored attorney-client protected communications between Benavides and Sanchez, even by telephone or video calls, has remained in effect since September 2, 2022.

*Order to Show Cause*

On February 6, 2025, this court issued an order to show cause to determine whether the relief sought by petitioner should be granted. While given the opportunity to submit additional briefing, the parties have declined to do so, asking we rely on the briefs they originally submitted after the petition was originally filed.

**DISCUSSION**

Petitioner Sheriff challenges the trial court's order as infringing on its statutory obligation to maintain public safety in the jail facility and outside. "The sheriff shall preserve peace" by engaging in crime prevention activities. (Gov. Code, § 26600.) The Sheriff may "reasonably regulate" its facilities. (*Mathis v. Appellate Dept.* (1972) 28 Cal.App.3d 1038.) "The sheriff shall prevent and suppress any affrays, breaches of the peace riots, and insurrections that come to his or her knowledge, and investigate public offenses which have been committed." (Gov. Code, § 26602.) It shall carry out such responsibilities within the confines of a jail. (*Bougere v. County of Los Angeles* (2006)

5.

141 Cal.App.4th 237, 247; see also Gov. Code, § 26605.) Absent constitutional concerns, the appropriate standard of review in challenging the trial court's ruling here is an abuse of discretion. (See *Los Angeles Free Press, Inc. v. City of Los Angeles* (1970) 9 Cal.App.3d 448, 457 (*Los Angeles Free Press*).)

The specific issue raised by petitioner is whether the trial court, given the record before the court, abused its discretion by allowing a former inmate, now working as a paralegal for a defense attorney, to confidentially communicate by telephone or video calls with inmate Sanchez, an alleged "shot caller."

Recognizing that courts are not in the best position to determine whether a prison regulation is reasonably related to legitimate penological interests, the following test has been developed to assist courts in this assessment:

> " '(1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally; and (4) whether the policy is an 'exaggerated response' to the [prison's] concerns.' " (*Snow v. Woodford* (2005) 128 Cal.App.4th 383, 390.)

This assessment addressed additional factors that should be considered under the first element, the connection between the policy adopted and governmental interest at stake. The court specifically stated:

> "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal [of safety and security] is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." (*Turner v. Safley* (1987) 482 U.S. 78, 89–90 (*Turner*).)

As a result, when considering the various parts of the *Turner* test, a trial court's exercise "of legal discretion must be grounded in reasoned judgment and guided by legal

principles and policies appropriate to the particular matter at issue." (*People v. Russel* (1968) 69 Cal.2d 187, 195.)

It is also important to recognize that while this case considers a decision made by petitioner in its role as the administrator of county jail facilities, California prisons are specifically allowed by regulation to prohibit visits in prisons by individuals who have a prior felony conviction within a certain period of time or was a coparticipant "in an offense with the incarcerated person." (Cal. Code Regs., tit. 15, § 3172.1(b)(2)(D) [approval and disapproval of prospective visitors].)

*Application*

We begin our consideration of the above test by remembering the warning issued by the United States Supreme Court in *Turner* that " 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " (*Turner, supra,* 482 U.S. at p. 84.) Great deference should, therefore, be given to those making decisions that impact the safety of a jail facility. (See *Los Angeles Free Press, supra,* 9 Cal.App.3d at p. 457.)

As noted earlier, during the August 11, 2022, hearing on the motion, the proceedings consisted almost entirely of oral argument by the parties on defendant Sanchez's motion seeking "unfettered" access to his entire defense team. While Sanchez's attorney cites the *Turner* test in his moving papers, the test was never mentioned during the hearing and the trial court failed to reference or address the elements of the test when ruling on the motion. For this reason, it is difficult to conclude all elements of the *Turner* test were properly considered by the trial court.

We are aware of the often-cited principle that absent evidence to the contrary, we will assume a trial court has considered all relevant legal standards before issuing a ruling. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375.) However, in this case we are faced with competing principles that give deference to law enforcement agencies

7.

tasked with preserving peace and security in a jail, while at the same time requiring them to ensure a prisoner's right to assist in their own defense.

It is important to recognize that even attorneys can be excluded from cases based on conflicts involving multiple clients, or other ethical concerns, requiring a defendant to obtain new counsel. (See Rules Prof. Conduct, rule 1.7.) Such conflicts do not necessarily result in a violation of constitutional rights without a showing of prejudice that the conflict resulted in inadequate representation being provided to the defendant. (See *People v. Mroczko* (1983) 35 Cal.3d 86, 103.)

A case that offers some assistance in this matter is *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). In *Clark* the court considered whether the trial court erred when it granted the prosecutor's request for an order preventing the defendant from making telephone calls from the jail, including any calls to his attorney.[3] The order was entered after telephone numbers for the defense attorney and an investigator were found in a telephone book that belonged to a codefendant, creating the possibility both the attorney and the investigator could be called as witnesses in the trial. (See *id.*, at pp. 547–548.) The *Clark* court acknowledged that restrictions placed on pretrial detainees to use the telephone to consult with counsel might implicate the right to the assistance of counsel in the prisoner's defense. (*Id.* at p. 549.) However, the *Clark* court went on to state, " '[n]ot every restriction on counsel's time or opportunity ... to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel.' " (*Ibid.*, citing *Morris v. Slappy* (1983) 461 U.S. 1, 11.) Before concluding the trial court had committed no error, the *Clark* court referenced another case it had recently decided on the same issue:

> "We recently rejected a claim with similar facts. A defendant who was a pretrial detainee in jail faced restrictions on telephone contact with her

---

**3** While in *Clark* the request to restrict telephone access came from the prosecution and not the jail administrators, the right being considered was the same.

attorney based on her misuse of that privilege to attempt to solicit the murder of a witness. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 621.) As we noted, '[j]ail authorities and the court did limit defendant's telephone privileges, but properly so given her criminal behavior in jail that abused those privileges.' (*Ibid.*)" (*Clark, supra,* 63 Cal.4th at p. 550.)

Based on our review of the discussions in both these cases, we conclude the reasons, concerns, and factual allegations put forth by the Petitioner in support of the original underlying order are valid, and rationally connected to a legitimate governmental interest on prison and community safety.

Benavidez and Sanchez were part of the same "gang sweep" and were charged with crimes in the same document. While Benavidez pled no contest to four counts and was released from custody,[4] Sanchez is still in jail awaiting charges pled in the same charging document. Benavidez and Sanchez are also allegedly part of the same criminal street gang, even if they are members of different branches of that gang. Some evidence exists in the record that Sanchez was a known "shot caller" of the gang while in the jail, who may have called for assaults on "dropouts" from the gang. Sanchez claims to now be a "dropout," and is now housed with other "dropouts." The record also shows that while in jail, Benavidez was alleged to have attacked other inmates who were identified as "dropouts." These were not incidents that occurred long ago in the past. Two of the incidents occurred within one year of Benavidez's release from custody. In fact, the second incident occurred in December of 2021, just weeks before Benavidez's release from a jail facility, and involved an attack on "dropouts" from the same gang network. There is no actual information in the record addressing Benavidez's current connections to the gang or whether those connections have been severed.

Based on the experience developed over time overseeing the jail and experiencing the unique customs of this particular gang network, it is logical to conclude Petitioner had reasonable and legitimate concerns about whether information obtained by Benavidez

---

[4] Presumably with credit for time served.

during those telephone or video calls could be shared with someone other than the attorney he was working for, or a message could be relayed by Benavidez to Sanchez on behalf of some current member of the gang outside of jail or prison.

In contrast, Sanchez relies on the case of *Clifton v. Superior Court* (1970) 7 Cal.App.3d 245, to argue that the "authority of the sheriff is not so absolute as to prevail against the defendant's right to prepare his defense," and that the choice of an investigator belonged to defense counsel. (*Id.* at p. 255.) However, in *Clifton* it appears the chosen investigator was denied all access to visits with the defendant because he had a prior felony conviction. This included visits when the investigator accompanied the defense attorney. (See *ibid.*) While this sounds similar to the facts in this case, we do not read the order issued calling for "reasonable visitation privileges" in the *Clifton* case as decisive as Sanchez suggests. (*Id.* at pp. 255–256.) Instead, we focus on the following discussion by the *Clifton* court on what interest is at stake:

> "The sheriff is responsible for maintaining secure custody of his prisoners. In meeting that responsibility he may reasonably regulate the operation of the county jail. The rule restricting jail visits by felons does not appear to be unreasonable. But the authority of the sheriff is not so absolute as to prevail against the defendant's right to prepare his defense. The choice of an investigator lies with defense counsel. There has been no showing by the prosecution that the investigator's visits to the jail cannot be so handled as to avoid endangering security. In the absence of such a showing, the investigator must be accorded *reasonable* visitation privileges with Clifton for the purpose of preparing the defense's case. If the privilege is abused, the prosecution has the recourse of seeking a protective order from the trial court, by whose appointment counsel is acting." (*Id.* at p. 255, original italics.)

While the investigator in *Clifton* was a convicted felon, there was no information provided in the opinion that there was any prior connection between the defendant and the investigator. This is completely different from the facts in this case. Benavidez and Sanchez were part of the same criminal gang network, and Benavidez engaged in an attack on behalf the gang against a "dropout" of the gang just before he was released

10.

from custody and just months before he presented himself as a paralegal working for the defense team.

Appellate courts have their own experience of reviewing cases involving gang members and the elaborate communication networks set up to communicate with others both inside and outside a prison setting.  For instance, in *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, the court described an elaborate system within the Los Angeles Men's Central Jail used by gang members to develop lists of targeted individuals:

> "The lists were written on tiny pieces of paper and hidden in clothing or in a body cavity. The shot caller distributed the lists to the various modules and onto the rows of cells to representatives who passed them on down the row, bits of paper tied to a piece of thread ('a kite'), or words whispered through the vents."  (*Id.* at p. 1545.)

In fact, this appellate district has also considered cases in which similar elaborate systems have been set up to let other gang members know about former members who might become targets of the gang.

Generally, a defendant challenging a prison regulation bears the burden of proof. (*In re Espinoza* (2011) 192 Cal.App.4th 97, 108.)  Defendant Sanchez provided no evidence addressing Benavidez' gang history and how he has separated himself from any association with the gang network since his release from jail.  At a minimum, Sanchez should have provided the court with this information.  Sanchez needed to provide more substance and not simply rely on the argument that any denial of his access to a paralegal chosen by his defense counsel, resulted in a constitutional violation of the right to counsel.

Returning to the *Turner* factors set out by the United States Supreme Court, and adopted by our state courts, we find petitioner was entirely justified in concluding Benavidez should not have any interaction with Sanchez simply because he is now a paralegal.  (See *Snow v. Woodford, supra,* 128 Cal.App.4th at p. 390, citing *Turner, supra,* 482 U.S. at p. 89.)  First, petitioner has a legitimate interest in preventing

11.

dangerous interactions between individuals, who may or may not still be in contact with current gang members, when one of those individuals is in their custody. Second, Sanchez has alternatives when it comes to preparing his defense. For instance, another paralegal can meet with Sanchez, or defense counsel himself can meet with Sanchez himself. Third, no evidence was introduced addressing whether " 'the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally.' " (*Snow v. Woodford, supra,* at p. 390.) On this point, therefore, we must defer to the assessment made by petitioner. Finally, we cannot conclude petitioner exaggerated the potential safety concerns posed by any unmonitored interactions. Benavidez and Sanchez are part of the same criminal gang network functioning in the same geographic area. Both men were charged in the same document filed after a coordinated "gang sweep," even if they were never charged together in any of the counts alleged in that document.

Petitioner has a great deal of experience with the various gangs functioning within its jurisdiction. Petitioner also has the ability to observe members of these gangs when they are taken into custody in the facilities they administer. In fact, some examples of the types of dangers that exist when gang members are housed in a facility are provided in a declaration submitted by petitioner in the trial court when petitioner opposed Sanchez's motion for an order to show cause. Unmonitored and confidential communications between Benavides and Sanchez as alleged members of the same gang, could allow them to freely exchange information, instructions and give orders to carry out activities in furtherance of the Nuestra Familia organization that could result in facilitating crimes and coercing individuals that would endanger the general public, sheriff deputies, and other inmates.

We believe the trial court abused its discretion by not giving adequate deference to petitioner's decision on an issue it believed impacted the safety of its facilities. (*See Los Angeles Free Press, supra,* 9 Cal.App.3d at p. 457.) We also conclude Sanchez failed to

12.

meet his burden of proof in challenging petitioner's decision, which was necessary to overcome the great deference that should have been given when a legitimate penological interest was involved.

## DISPOSITION

The order of the trial court is reversed. We grant the writ of mandate and order the trial court to vacate its order which has the effect of allowing paralegal Benavidez to have confidential attorney client communications with defendant. Instead, we direct the trial court to enter a new order specifically denying paralegal Benavidez any access to Sanchez, while allowing defense counsel or other members of the defense team to have unfettered access to defendant Sanchez for the purpose of preparing his defense.


FRANSON, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.